DOUGLAS J. ROVENS (SBN 106582)
ROVENS LAMB LLP
drovens@rovenslamb.com
1500 Rosecrans Avenue, Suite 418
Manhattan Beach, CA 90266
Telephone: (310) 536.7830
Facsimile: (310) 872.5026

Attorneys for Plaintiff EAGLE K.S. IMPORT AND EXPORT, INC., DBA MEGSALES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EAGLE K.S. IMPORT AND EXPORT, INC. DBA MEGSALES, a California corporation,

Plaintiff,

vs.

MAINSTREAM GLOBAL, INC., a Massachusetts corporation,

Defendant.

Case No.

**COMPLAINT FOR DAMAGES FOR FRAUD, NEGLIGENCE, BREACH OF CONTRACT, AND MONEY HAD AND RECEIVED**

Plaintiff Eagle K.S. Import and Export, Inc., dba Megsales (“Megsales”) for its claims for relief against defendant Mainstream Global, Inc. (“Mainstream”) hereby complains and alleges as follows:

ROVENS LAMB LLP
TRIAL LAWYERS
MANHATTAN BEACH, CA

## JURISDICTION AND VENUE

1. Plaintiff Megsales is a corporation duly authorized and existing under the laws of California with its principal place of business located in Arcadia, Los Angeles County, California. At all relevant times Megsales was in the import/export business specializing in supplying computers, computer component parts, and computer related products to customers worldwide.

2. Megsales is informed and believes, and based thereon alleges that defendant Mainstream is a corporation organized and existing under the laws of Massachusetts and with its principal place of business in Lawrence, Massachusetts and is engaged in the business of purchasing and selling computers, computer component parts, and computer related products and is doing business in California.

3. The Court has jurisdiction over Megsales's complaint pursuant to 28 U.S.C. §1332 (a)(1) because there is complete diversity of citizenship between Megsales, which is a citizen of the state of California, and Mainstream, which is a citizen of a state other than California, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b)(2) or (b)(3) in that Megsales resides within the Central District and a substantial part of the events and omissions giving rise to Megsales's claims occurred within the Central District and this Court has personal jurisdiction over Mainstream.

## GENERAL ALLEGATIONS

4. This action arises from Mainstream's fraudulent and reckless conduct with respect to the failure to deliver $250,000 of computer components ordered from Mainstream and paid for in advance by Megsales. Instead of delivering Intel Computer Processor Units ("CPU") purchased by Megsales, Mainstream delivered boxes of metallic blanks in place of the Intel CPUs ordered and paid for by Megsales.

5. Megsales had been doing business with Mainstream since January 2014. From the commencement of their business relationship Megsales has paid Mainstream $1.44 million. Pursuant to the parties' course of dealings, Megsales paid for goods in advance by wire funds transfers for invoices issued by Mainstream to Megsales against Megsales's purchase orders.

6. On December 18, 2015, Megsales submitted to Mainstream purchase order no. 2349 for the purchase of 1,575 Intel CPUs for the total purchase price of $250,015.50. On the same date, Mainstream invoiced Megsales per Mainstream's invoice no. 10155A, the full purchase price, which Megsales paid by wire transfer on the following Monday, December 21, 2015. A true and correct copy of Megsales's purchase order and Mainstream's invoice is attached hereto as Exhibit A.

7. The Intel CPUs were supposed to be shipped by December 22, 2015, via Fed Ex Air directly by Mainstream to Megsales's customer in Hong Kong, China. Mainstream, however, failed to ship the order on December 22, 2015.

8. Mainstream claims to have ordered the Intel CPUs from an OEM company located in Mexico called Foxconn, with which it claims to have been doing business for more than five years, and that Mainstream's president personally went to Mexico on December 23, 2015, picked up the order at a restaurant purportedly from a Foxconn representative, which consisted of two boxes, and brought the boxes to a Fed Ex facility in Juarez, Mexico for shipment to Mainstream's facilities in Massachusetts.

9. Mainstream failed to open the boxes, or perform any inspection of the boxes when Mainstream purportedly took possession of the boxes from Foxconn.

10. Mainstream claims to have delivered the uninspected boxes late in the afternoon to Fed Ex on December 23, 2015, and because of the late drop off the shipment did not leave the Fed Ex facility in Juarez, Mexico until December 28, 2015, five days later, because of holiday closures of the Fed Ex facility.

ROVENS LAMB LLP
TRIAL LAWYERS
MANHATTAN BEACH, CA

11. Megsales is informed and believes, and based thereon alleges that one of the boxes was delivered to Mainstream's facilities in Massachusetts on December 30, 2015, that the box was repackaged by Mainstream because the shipping box purportedly had been damaged during shipment, and that Mainstream delivered the box to Fed Ex for shipment to Megsales's customer. Even though delivery had been delayed in Mexico for days and the box purportedly had been damaged during shipment from Juarez, Mexico to Mainstream's facilities, Mainstream claims not to have inspected the shipment before delivering the box to Fed Ex for shipment to Megsales's customer in Hong Kong, China.

12. Megsales is informed and believes, and based thereon alleges that the second box was delayed in customs and not delivered to Mainstream until the following day, December 31, 2015, that Mainstream claims also to have failed to inspect the second shipment before delivering the box to Fed Ex for shipment to Megsales's customer in Hong Kong, China.

13. On January 1, 2016, Megsales's customer received the first box that had been shipped by Mainstream. Upon opening the shipment, Megsales's customer discovered that it did not contain any Intel CPUs, but instead contained metal blanks, and notified Megsales that the shipment received from Mainstream contained metal blanks and provided photographic evidence to Plaintiff.

14. After Megsales was notified of the problem, Megsales had the second shipment rerouted by Fed Ex to Megsales's facilities in Arcadia, California, before being delivered to Megsales's customer in Hong Kong, China. Megsales received the rerouted shipment on January 8, 2016, and intentionally did not open the shipment so that it would remain sealed exactly as Megsales had received and to ensure that Megsales could not be accused of tampering with the shipment.

15. Megsales engaged in a series of communications with Mainstream, notifying Mainstream of the fraudulent transaction, and sought replacement or

reimbursement from Mainstream for Mainstream's failure to deliver the goods that had been purchased and paid for in advance by Megsales. Mainstream agreed to wire $100,000 to Megsales as partial reimbursement and to investigate the fraud. Following a series of communications between Megsales and Mainstream, Mainstream never wired Megsales $100,000, or reimbursed Megsales in any amount and never made good on the order. Ultimately, Mainstream stopped communicating entirely with Megsales.

16. When Megsales exhausted its attempt to resolve the fraudulent transaction with Mainstream, Megsales reported the fraud to the Arcadia Police Department. On or around February 17, 2016, an Arcadia Police Department officer responded to Megsales's complaint, came to Megsales's facilities, inspected the box which had been rerouted to Megsales's facilities, and witnessed Megsales's opening the box. The shipment contained two Intel boxes inside that also contained metallic blanks, instead of Intel CPUs, which had been ordered from Mainstream and paid for by Megsales.

## FIRST CLAIM FOR RELIEF
## FOR FRAUD

17. Megsales incorporates herein by reference each and every allegation contained in paragraphs 1 through 16, above, as though set forth here in full.

18. On December 21, 2016, Megsales placed a purchase order with Mainstream for Intel CPUs, for which Mainstream required payment by Megsales in advance and Mainstream invoiced Megsales by delivering its invoice to Megsales.

19. On December 22, 2016, Megsales wire transferred funds in the amount of $250,015.50 to Mainstreams bank account, which represented payment in full for the Intel CPUs ordered by Megsales.

20. Megsales is informed and believes, and based thereon alleges that Mainstream never intended to deliver the Intel CPUs purchased by Megsales and

paid for in advance, but instead fraudulently induced Megsales to make payment in advance, caused metallic blanks to be delivered instead of Intel CPUs, and place the blame on Megsales supplier, Foxconn, which is located in Mexico making it difficult to pursue or from which to obtain information.

21. In making advance payment to Mainstream, Megsales reasonably relied on it prior course of dealings with Mainstream and had no advance warning or reason to believe that Mainstream would defraud Megsales.

22. As a direct and proximate result and substantial factor of Mainstream's fraud, Megsales has been damaged in an amount in excess of $250,000, the exact amount of which will be proven at time of trial and includes lost profit and other damages.

23. Megsales is informed and believes, and based thereon alleges the Mainstream acted fraudulently and as a result of Mainstream's fraudulent conduct, Megsales is entitled to exemplary or punitive damages to punish Mainstream and to deter Mainstream and others from such future fraudulent conduct.

**SECOND CLAIM FOR RELIEF**

**FOR NEGLIGENCE**

24. Megsales incorporates herein by reference each and every allegation contained in paragraphs 1 through 16, and 18 through 21, above, as though set forth here in full.

25. Mainstream is in the business importing, purchasing, and selling computers, computer component parts, and computer related products, holds itself out as being in business for more than twenty years, and being a reputable business.

26. After requiring Megsales to pay Mainstream $250,000 in advance, Mainstream owed Megsales a duty of care to inspect the Intel CPUs Mainstream ordered from its supplier, Foxconn, when Mainstream picked up the purported Intel CPUs.

27. After requiring Megsales to pay Mainstream $250,000 in advance, Mainstream owed Megsales a duty of care to inspect the Intel CPUs Mainstream ordered from its supplier, Foxconn, when Mainstream received the shipments at Mainstream's facilities in Massachusetts and prior to delivering the shipments to Megsales' customer.

28. Intel CPUs weigh approximately 0.2 ounces each. The metallic blanks that were contained in the boxes Mainstream purportedly picked up from Foxconn in Mexico, however, each weighed 1.3 ounces, substantially more than what Intel CPUs weighed.

29. At a minimum, Mainstream had a duty to weigh the boxes and would have discovered that the boxes were way overweight from what they should have been if they contained Intel CPUs. Further, Mainstream apparently knew the boxes were overweight, first reporting that the boxes weighed 45 pounds, but later stated the boxes weighed 61 pounds.

30. Mainstream breached its duty of care by failing to inspect the goods or at a minimum weight the boxes before shipping the boxes to its facilities in Massachusetts and then shipping the goods to Megsales' customer.

31. Alternatively, if Mainstream in fact weighed the boxes, Mainstream should have known that the boxes contained something other than Intel CPUs.

32. Had Mainstream inspected the goods or weighed the boxes as it should have, Mainstream could have confronted Foxconn immediately, if in fact, Foxconn was responsible, and remedied the situation at that time, but failed to do so.

33. As a direct and proximate result and substantial factor of Mainstream's negligence, Megsales has been damaged in an amount in excess of $250,000, the exact amount of which will be proven at time of trial and includes lost profit and other damages.

ROVENS LAMB LLP
TRIAL LAWYERS
MANHATTAN BEACH, CA

**THIRD CLAIM FOR RELIEF**

**FOR BREACH OF CONTRACT**

34. Megsales incorporates herein by reference each and every allegation contained in paragraphs 1 through 16, 18 through 21, and 25through 32, above, as though set forth here in full.

35. On December 18, 2016, Megsales and Mainstream entered into a written contract for the purchase and sale of Intel CPUs.

36. The written contract consisted of Megsales' purchase order to Mainstream for the purchase of 1,575 Intel CPUs for the total purchase price of $250,015.50, which was accepted by Mainstream on the same date by delivery of Mainstream's invoice to Megsales.

37. Megsales performed the contract by making advance payment in full purchase price, which Megsales paid by wire transfer on December 21, 2015.

38. Mainstream breached the written contract by failing to deliver any of the Intel CPUs ordered and paid for by Megsales, and instead causing to be delivered metallic blanks.

39. As a direct and proximate result and substantial factor of Mainstream's breach of written contract, Megsales has been damaged in an amount in excess of $250,000, the exact amount of which will be proven at time of trial and includes lost profit and other damages.

**FOURTH CLAIM FOR RELIEF**

**FOR MONEY HAD AND RECEIVED**

40. Megsales incorporates herein by reference each and every allegation contained in paragraphs 1 through 16, above, as though set forth here in full.

41. On or about December 21, 2015, Megsales paid to Mainstream and Mainstream received $250,015.50, for the use and benefit of Megsales.

42. There was a total failure of consideration because Mainstream promised to deliver to Megsales 1,575 Intel CPUs in exchange for Megsales'

payment, but Mainstream failed to execute its promise and did not deliver anything of value to Megsales in exchange for its payment of $250,015.50.

43. As a direct result of Mainstream's conduct, Megsales is entitled to rescission and restitution of all amounts paid to Mainstream.

## PRAYER FOR RELIEF

Plaintiff Eagle K.S. Import and Export, Inc., dba Megsales hereby prays for judgment against defendant Mainstream Global, Inc. as follows:

1. On the First Claim for Relief for damages in excess of $250,000, the exact amount of which will proven at trial, and for punitive or exemplary damages;

2. On the Second Claim for Relief for damages in excess of $250,000, the exact amount of which will proven at trial;

3. On the Third Claim for Relief for damages in excess of $250,000, the exact amount of which will proven at trial;

4. On the Fourth Claim for Relief for rescission and restitution of all amounts paid to Mainstream Global, Inc.; and

5. On all Claims for Relief for costs of suit incurred, for interest, and for such other and further relief as the Court deems just and proper.

DATED: November 10, 2016 ROVENS LAMB LLP

By: /s/ *Douglas J. Rovens*
DOUGLAS J. ROVENS
Attorneys for Plaintiff EAGLE K.S. IMPORT AND EXPORT, INC. DBA MEGSALES

ROVENS LAMB LLP
TRIAL LAWYERS
MANHATTAN BEACH, CA

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Eagle K.S. Import and Export, Inc., dba Megsales hereby demands a trial by jury as to all issues to which it is entitled.

DATED: November 10, 2016

ROVENS LAMB LLP

By: /s/ *Douglas J. Rovens*
DOUGLAS J. ROVENS
Attorneys for Plaintiff EAGLE K.S. IMPORT AND EXPORT, INC. DBA MEGSALES

**EXHIBIT A**

/6 496

MEGSALES

115 La Porte Street
ARCADIA, CA 91006

# Purchase Order

| Date | P.O. No. |
|---|---|
| 12/18/2015 | 2349 |

RECEIVED IN FULL

| Vendor | Ship To |
|---|---|
| Mainstream Global Solution<br>60 Island Street<br>Lawrence Ma 01841<br>Attn: John Samataro — OLD SALES REP | CO PROSPIRITY |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 2349 - SRIQJ | BRAND NEW CPU IN BOX -SR1QJ | 315 | 147.54 | 46,475.10 |
| 2349 - SR1S6 | CPU BRAND NEW IN BOX -SR1S6 | 630 | 130.54 | 82,240.20 |
| 2349 -SR1QF | CPU BRAND NEW IN BOX -SR1QF | 315 | 237.54 | 74,825.10 |
| 2349- SR1QN | CPU BRAND NEW IN BOX -SR1QN | 315 | 147.54 | 46,475.10 |
| | PAYMENT VIA WIRE | | | |
| | SHIPMENT NO LATER THAN DEC 22 2015 VIA FEDEX AIR TO HONG KONG | | | |
| | LABEL TO BE PROVIDED BY MEGSALES | | | |

**Total** $250,015.50

16-445

MAINSTREAM® GLOBAL
91 Glenn Street
Lawrence, MA 01843
(978) 682-6767 Fax (978) 422-1618

# Invoice

| Date | Invoice # |
|---|---|
| 12/18/2015 | 10155A |

| Bill To | Ship To |
|---|---|
| Eagle K.S. Import & Export, Inc.<br>DBA MEGSALES<br>115 La Porte Street<br>Arcadia, CA 91006 | MEGSALES<br>115 La Porte Street<br>Arcadia, CA 91006 |

| Customer PO # | Terms | Rep | Ship Date | Ship Via | FOB |
|---|---|---|---|---|---|
| 121815 | Prepay | JCY | 12/18/2015 | FedEx | origin |

| Qty | Part Number | Manufacturer | Description | Unit Price | Class | Amount |
|---|---|---|---|---|---|---|
| 315 | CPU | | SR1QJ | 147.54 | | 46,475.10 |
| 630 | CPU | | SR1S6 | 130.54 | | 82,240.20 |
| 315 | CPU | | SR1QF | 237.54 | | 74,825.10 |
| 315 | CPU | | SR1QN | 147.54 | | 46,475.10 |
| | | ******PROFORMA INVOICE****** | | | | |

| | |
|---|---|
| **Total** | $250,015.50 |